UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**DOUGLAS BORIS,**

    **Plaintiff,**

v.                                                                                                                   **Case No: 5:15-cv-434-Oc-PRL**

**COMMISSIONER OF SOCIAL**
**SECURITY**

    **Defendant.**

## ORDER

Plaintiff appeals the administrative decision denying his application for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

**I.    BACKGROUND**

Plaintiff filed an application for DIB, alleging disability beginning March 15, 2012. (Tr. 332–33). The claim was denied initially, and upon reconsideration. (Tr. 113–22, 124–37). At Plaintiff's request, a hearing was held before an Administrative Law Judge, who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 75–102, 138–52). But then the Appeals Council remanded the case, in which the Administrative Law Judge was to do the following:

> Evaluate the claimant's mental impairment(s) in accordance with the special technique described in 20 CFR 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).
> Further evaluate the claimant's obesity, pursuant to Social Security Ruling 02-lp.

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).
>
> If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-14, 85-15 and 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404. 1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

(Tr. 153–56). A second hearing was held before Administrative Law Judge Janet Mahon (the "ALJ"), who then issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 20–40, 46–74).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 25). At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes with peripheral neuropathy, arthropathies, high blood pressure, hypothyroidism, high cholesterol, obesity, and an affective disorder (depression). (Tr. 25).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 25–27). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can stand and walk for only two hours in an 8 hour workday. He can occasionally climb, balance, stoop, kneel, and crawl. He must avoid concentrated exposure to extreme heat and hazards, such as heights and machinery. He must not climb ladders, ropes or scaffolds. He can do frequent

fingering bilaterally. He can do work requiring simple tasks and occasional interaction with the public.

(Tr. 27–32). At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 32).

At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are sedentary jobs that exist in significant numbers in the national economy that the Plaintiff can perform: document preparer, fishing reel assembler, and order clerk. (Tr. 32–33). Thus the ALJ found that Plaintiff was not disabled from March 15, 2016 through the date of the decision. (Tr. 33).

Then, the Appeals Council denied Plaintiff's Request for Review, making the hearing decision the final decision of the Commissioner. (Tr. 4–9). With his administrative remedies exhausted, Plaintiff filed the instant appeal. (Doc. 1). On appeal, Plaintiff proceeds *pro se*. (Docs. 1, 3, 5, 17). Plaintiff's memorandum (Doc. 17) incorporates a letter written by Plaintiff's former counsel to the Appeals Council (Tr. 411–17).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

On appeal, Plaintiff raises four issues: (1) whether the ALJ properly evaluated the medical evidence, (2) whether the ALJ properly evaluated Plaintiff's mental impairments, (3) whether the ALJ properly evaluated Plaintiff's physical impairments, and (4) whether the ALJ erred by relying on the Vocational Expert. (Doc. 17; Tr. 411–17). For the reasons explained below, I find no error.

**A. The ALJ properly evaluated the medical evidence**

Plaintiff challenges the ALJ's consideration of two medical opinions: the opinion of his treating psychologist, Robert P. Hosford, Ph.D., and the opinion of his treating podiatrist, Albert Kaplan, D.P.M. (Tr. 412–16).

The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor. *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips* v. *Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41. Here, the ALJ articulated good cause for not crediting the opinions at issue. (Tr. 30–32). I will address Dr. Hosford's opinion first.

Dr. Hosford opined in a *Mental Impairment Questionnaire (RFC and Listings)* that Plaintiff was seriously limited in his ability to maintain regular attendance and be punctual within customary and usually strict tolerances, in his ability to sustain an ordinary routine without special supervision, in his ability to work in coordination with or proximity to others without being unduly distracted, in his ability to understand and remember detailed instructions, and in his ability carry out detailed instructions. (Tr. 689). The doctor also found that Plaintiff was unable to meet competitive standards in completing a normal workday and workweek without interruptions from

psychologically based symptoms, was unable to perform at a consistent pace without an unreasonable number and length of rest periods, was unable to deal with normal work stress, was unable to set realistic goals or make plans independently of others, and was unable to deal with the stress of semiskilled and skilled work. (Tr. 678–92). Dr. Hosford also found that Plaintiff had marked limitations in activities of daily living and in difficulties maintaining concentration, persistence, and pace. (Tr. 691). Here, the ALJ articulated good cause for not crediting this opinion. (Tr. 31–32).

The ALJ first noted that Dr. Hosford treated Plaintiff for only a few months. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Indeed, Dr. Hosford treated Plaintiff only four months—from December 2014 to March 2015. (Tr. 680–95).

The ALJ also stated that the marked limitations in activities of daily living and in difficulties maintaining concentration, persistence, and pace that Dr. Hosford found are inconsistent with Plaintiff's daily activities, which include cooking, housework, driving, shopping, and computer use. (Tr. 360–62, 378–79). The ALJ also discounted the doctor's notation of Plaintiff's physical limitations as Dr. Hosford's notation was merely based on Plaintiff's own self-reports. *See Costigan v. Comm'r, Soc. Sec. Admin.*, 603 F. App'x 783, 788 (11th Cir. 2015) (finding that the ALJ articulated good cause for giving little weight to the opinion of a treating physician where the physician's opinion was based in part on the plaintiff's self-report of symptoms). Dr. Hosford also noted (and the ALJ alluded) that Plaintiff reported that his anxiety and panic attacks only occurred occasionally at the time Dr. Hosford treated Plaintiff. (Tr. 31–32, 683–84).

Yet the ALJ did accept Dr. Hosford's opinion that Plaintiff had moderate limitations in social functioning, with a limited but satisfactory ability to interact with the general public and maintain socially appropriate behavior. (Tr. 31, 690). The ALJ then explained that Dr. Hosford reported that Plaintiff was pleasant, alert, and oriented when Plaintiff interviewed with Dr. Hosford. (Tr. 31, 681, 694). And thus the ALJ limited Plaintiff to only occasional interaction with public in the RFC assessment. (Tr. 27, 31).

Plaintiff argues that the ALJ erred by adopting only a portion of Dr. Hosford's opinion. (Tr. 413). But as set forth above, the ALJ explained why she was gave little weight to part of Dr. Hosford's opinion (Dr. Hosford treated Plaintiff for a brief period and the marked limitations are inconsistent with Plaintiff's daily activities), and the ALJ explained why she was persuaded by the part of Dr. Hosford's opinion that Plaintiff had moderate limitations in social functioning (Plaintiff was pleasant, alert, and oriented when he interviewed with Dr. Hosford). Given the ALJ's explanations, the ALJ did not err; the ALJ's RFC assessment still need not mirror the opinion of every doctor, nor is the ALJ required to adopt all of the limitations a doctor assessed. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014).

As to Dr. Kaplan, he opined in a *Diabetes Mellitus Medical Source* statement that Plaintiff could only sit for thirty minutes at a time, could only stand for twenty minutes at a time, could only sit or stand or walk for about two hours in an eight-hour day; could never lift twenty pounds; would need to elevate his legs as much as possible during the day; would be off task twenty-five percent or more each day; would be incapable of even low-stress work due to high blood pressure; and would be absent from work about three days per month. (Tr. 605–08). The ALJ also articulated good cause for not crediting this opinion. (Tr. 30–31).

The ALJ first noted that Dr. Kaplan's opinion was inconsistent with Plaintiff's conservative blood pressure treatment, which included only glucose control and compression stockings. (Tr. 30–31, 602–03, 605). And as the ALJ noted, although Plaintiff's blood pressure was elevated periodically, Plaintiff denied having cardiovascular symptoms. (Tr. 30, 589. 592). The ALJ also noted that Dr. Kaplan's opinion was inconsistent with Plaintiff's daily activities, which include cooking, housework, driving, shopping, and computer use. (Tr. 30–31, 360–62, 378–79). The ALJ stated that Dr. Kaplan's opinion that Plaintiff would need to elevate his feet is not supported by the doctor's own progress notes—i.e., Dr. Kaplan never instructed Plaintiff to elevate Plaintiff's legs as part of Plaintiff's podiatry treatment. (Tr. 31, 602–03).

Plaintiff also argues that Dr. Kaplan's opinion is consistent with the opinion of Aleydis Rivera-Ornitiri, M.D., who stated that Plaintiff should not walk or stand for prolonged periods of time and whose opinion the ALJ accorded significant weight to. (Tr. 414). Even though Dr. Kaplan's and Dr. Rivera-Ornitiri's opinions may have been consistent in certain aspects, any consistency does not constitute error on the ALJ's behalf: as noted above, the ALJ's RFC assessment still need not mirror the opinion of every doctor, nor is the ALJ required to adopt all of the limitations a doctor assessed. *See Castle*, 557 F. App'x at 853.

These reasons, as enumerated by the ALJ in his opinion, constitute sufficient good cause to discount the opinions of Dr. Hosford and Dr. Kaplan. *See Phillips*, 357 F.3d at 1240–41.

Plaintiff also states that the ALJ erred by according substantial weight to the opinion of the state agency consultant Thomas Peele, M.D., who did not review the entire record but opined that Plaintiff could lift twenty pounds and could stand or walk for three to four hours. (Tr. 30, 132–33). The ALJ stated that Dr. Peele's opinion was "consistent with evidence of leg pain due to peripheral neuropathy and edema in the lower extremities, and with evidence of obesity and

reduced energy." (Tr. 30). But even if Dr. Peele did not review the whole record, the ALJ did not err because the entire record was before the ALJ. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting that "even if the non-examining doctor was unable to review all of [the plaintiff's] medical records before making her RFC determination, . . . the ALJ, who made the ultimate determination, had access to the entire record").

Plaintiff finally argues that the ALJ erred by not discussing the opinion of the single decision maker ("SDM").[1] (Tr. 415). Yet Plaintiff does not provide any evidence that a SDM either opinioned of functional limitations greater than those provided for by the RFC, nor does Plaintiff show that the SDM was a medical doctor whose opinion constituted an medical opinion. *See Siverio*, 461 F. App'x at 872; *Bolton v. Astrue*, No. 3:07-CV-612-J-HTS, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) ("'An SDM is not a medical professional of any stripe, and' a finding from such an individual is 'entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.'") (quoting *Velasquez v. Astrue*, No. 06-cv-02538-REB, 2008 WL 791950, at *3 (D. Colo. Mar. 20, 2008)). Even so, consistent with the remand order (Tr. 155), the ALJ did consider but gave no weight to the SDM's opinion. (Tr. 32).

### B. The ALJ properly considered Plaintiff's mental impairments

Plaintiff argues that the ALJ erred in considering Plaintiff's mental impairments under 20 C.F.R. § 404.1520a. (Tr. 411–13; Pl.'s Br. at p. 1). "To evaluate the severity of a claimant's mental impairments in steps two and three, the regulations direct the ALJ to use a special

---

[1] "In Florida, a single decision maker ("SDM") is assigned to make the initial disability determination after 'appropriate consultation with a medical or psychological consultant.'" *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (quoting 20 C.F.R. § 404.906(b)(2)). "[T]he 'SDM' designation connotes no medical credentials" and "the SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.'" *Id.* (quoting POMS § DI 24510.050) (citations omitted).

Psychiatric Review Technique (PRT)." *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 (11th Cir. 2013); *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005). The PRT includes the broad functional areas known as the four "paragraph B" criteria (i.e., activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decomposition), and the ALJ must analyze each of these four criteria and make specific findings as to each. 20 C.F.R. §§ 404.1520a(a)(1), (c)(3)–(4). When an ALJ conducts a PRT, the ALJ's written decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(e)(4).

Here, Plaintiff does not directly challenge the ALJ's application of the PRT—i.e., Plaintiff does not claim that the ALJ failed to analyze the four criteria or claim that the ALJ failed to make specific findings as to each of the four criteria. Plaintiff instead makes several interrelated assertions that the ALJ relied on inadequate evidence, or perhaps ignored evidence, in conducting the PRT.

For example, Plaintiff asserts that the Appeals Council remand required the ALJ to obtain additional medical expert testimony on Plaintiff's mental impairments. (Tr. 412). Yet the remand order did not require that the ALJ obtain further medical evidence: the Appeals Council remand order only required the ALJ to "[e]valuate the claimant's mental impairment(s) in accordance with the special technique described in 20 CFR [§] 404.1520a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 [§] CFR 404.1520a(c)." (Tr. 155). The ALJ did just this. (Tr. 26–27). And, to the extent Plaintiff argues that the ALJ erred by failing to obtain a consultative psychological examination, this argument is not persuasive.

Where, as here, a case is heard by an ALJ, the "ALJ has regulatory flexibility to evaluate mental impairments to determine their severity" without necessarily obtaining a consultative examination first.  *Sneed v. Barnhart*, 214 F. App'x 883, 886 (11th Cir. 2006); *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999) ("[A]n ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental impairment.").  Indeed, as the Social Security Act requires only substantial evidence to support the ALJ's findings, a consultative examination is not required to establish absolute certainty regarding Plaintiff's condition.  *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

What is more, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record."  *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997).  The court should be guided by whether the record shows evidentiary gaps which result in unfairness or "clear prejudice."  *Id.*  Here, Plaintiff does not argue that the record contains evidentiary gaps and Plaintiff does not argue that he is somehow clearly prejudiced.[2] (For example, in conducting the PRT the ALJ cited to records spanning a twenty-six month period—*Function Reports* from October 2012 and December 2012; the transcript from the February 2014 hearing; and Dr. Hosford's December 2014 *Mental Status Evaluation* (Tr. 26, 75–

---

[2] Plaintiff notes in his memorandum that, around the time Dr. Hosford treated Plaintiff, a doctor named Devyani Desai, M.D. also treated Plaintiff for depression and bipolar.  (Doc. 17, p. 1).  Plaintiff states that he did not see any records from Dr. Desai in the record.  I note that the record contains at least some records from Dr. Desai (Tr. 658–59), the ALJ discussed both Plaintiff's alleged depression and bipolar syndrome (Tr. 28, 31–32), and the ALJ discussed the fact that Dr. Desai prescribed Plaintiff depression medication.  (Tr. 32, 659).  Also, Plaintiff does not explain what prejudice, if any, that he suffers from the absence of other records from Dr. Desai, Plaintiff does not attach any records from Dr. Desai, and Plaintiff does not explain what functional limitations Dr. Desai may have opined of.

102, 358–66, 376–383, 693–95)). Thus, absent any argument of an evidentiary gap or clear prejudice, the ALJ was under no duty to order a consultative psychological examination.

Plaintiff also appears to argue that the ALJ did not consider, when conducting the PRT, the medical opinion of his treating psychologist, Dr. Hosford. (Tr. 412–13). But the ALJ did consider at least part of Dr. Hosford's medical opinion when the ALJ considered Plaintiff's social functioning as the ALJ explicitly cited to Dr. Hosford's December 4, 2014, *Mental Status Evaluation*. (Tr. 26, 693–95). And in conducting the PRT, as noted *supra*, the ALJ also cited to *Function Reports* completed by Plaintiff in October 2012 and December 2012 (Tr. 358–66, 376–383), along with Plaintiff's testimony from his initial hearing in February 2014 (Tr. 75–102). And to the extent Plaintiff bases this argument on the ALJ's alleged improper consideration of Dr. Hosford's opinion, see (Tr. 412–13), the ALJ did not err as the ALJ properly considered the opinion. *See supra* Section III.A.

Finally, to the extent Plaintiff argues that the RFC assessment, as to its mental limitations, is not supported by substantial evidence, this argument fails. *See* (Tr. 413). Assuming Plaintiff is indeed challenging the RFC, the ALJ discussed Plaintiff's alleged mental limitations (Tr. 28); the ALJ then thoroughly examined the medical evidence of Plaintiff's functional limitations as set forth in Dr. Hosford's opinion (Tr. 31–32); the ALJ articulated good cause and legitimate reasons for according some of Dr. Hosford's opinion little weight and finding some of the opinion persuasive (Tr. 31–32); the ALJ also noted the opinions of the state agency psychologist who opined that Plaintiff had no severe mental impairments (Tr. 32, 117, 131); and the ALJ also noted that Plaintiff's primary care physician prescribed Plaintiff medication for his depression, depression which—according to the ALJ—was understandable given that Plaintiff has lost the ability to perform his chosen career as a chef (Tr. 32, 658–59). Thus the RFC is supported by

substantial evidence: other than Dr. Hosford's opinion, Plaintiff does not point to any evidence that shows he has functional limitations greater than those provided for by the RFC and Plaintiff does not point to any evidence that the ALJ failed to consider.

In sum, the remand order shows that the ALJ was not required to obtain additional medical expert testimony; the ALJ's decision shows that she, in conducting the PRT, considered a *Mental Status Evaluation* performed by Dr. Hosford, along with other evidence that spans a significant time period; and the RFC assessment is supported by substantial evidence. Thus the ALJ did not err in considering Plaintiff's mental impairments.

### C. The ALJ properly considered Plaintiff's physical impairments

Plaintiff also argues that the ALJ failed to properly consider Plaintiff's obesity and failed to properly consider Plaintiff's diabetic neuropathy. I will address the former issue first.

Where, as here, an "individual making a disability claim has a BMI that falls within the Clinical Guidelines of obesity, the individual effects of that person's obesity, as well as the exacerbating effects of obesity on other severe impairments, should be considered in determining whether that individual is disabled." *Jones v. Astrue*, No. CV 310-011, 2011 WL 1587731, at *8 (S.D. Ga. Mar. 29, 2011), *report and recommendation adopted*, No. CV 310-011, 2011 WL 1575375 (S.D. Ga. Apr. 26, 2011) (citing SOCIAL SECURITY RULING 02–1p, *2–6). And when assessing a Plaintiff's RFC, the ALJ should "consider the effect 'obesity has upon Plaintiff's ability to perform routine movement and necessary physical activity within the work environment' as the 'combined effects of obesity with other impairments may be greater than might be expected without obesity.'" *Parks v. Astrue*, No. 5:07-CV-504-OC-GRJ, 2009 WL 764518, at *14 (M.D. Fla. Mar. 20, 2009), *aff'd sub nom. Parks v. Comm'r of Soc. Sec.*, 353 F. App'x 194 (11th Cir. 2009).

Here, the ALJ recognized that Plaintiff's other impairments and symptoms are adversely affected by obesity. (Tr. 30). Then the ALJ noted Plaintiff's high cholesterol, high blood pressure, diabetes, and changes to Plaintiff's spine. The ALJ went on to state that Plaintiff's back problems affect his ability to sit, his blood pressure is generally controlled by medication, and that his diabetes merely causes swings in energy levels. Based on this analysis, the ALJ concluded that Plaintiff's "combination of impairments and symptoms" do not preclude the ability to perform work. (Tr. 30).

The ALJ also accorded substantial weight to the opinion of state agency medical consultant Dr. Peele, whose opinion, according to the ALJ, was consistent with the evidence of Plaintiff's obesity and who found that Plaintiff could only stand and walk for three to four hours a day due in part to obesity and that Plaintiff could lift twenty pounds. (Tr. 30, 132). That said, Plaintiff fails to even mention, let alone demonstrate, how his obesity affects his ability work. Nor does he point to evidence of any functional limitations related to his obesity that were not considered by the ALJ in reaching the RFC determination. Thus the ALJ did not err. *See Parks*, 2009 WL 764518 at \*14–15.

Likewise, Plaintiff makes no argument as to how his diabetic neuropathy affects his ability to work; nor does he point to any evidence of this impairment that the ALJ failed to consider. The ALJ noted that neuropathy affects Plaintiff's arm and hand use, and the ALJ noted Plaintiff's allegations of an impaired ability to stand, sit, and walk. (Tr. 28). But as the ALJ points out, despite sensory deficits in his lower legs, Plaintiff still has full muscle strength and full range of motion (Tr. 29, 602); he can perform daily activities that are inconsistent with his alleged impaired arm and hand use (Tr. 29–30); and the medical evidence does not support his alleged inability to

use his arms and hands—e.g., a consultative examination showed his grip strength was 5/5, fine manipulation in the hands was normal, and fingertip sensation was normal (Tr. 30, 548).

Accordingly, the ALJ properly evaluated Plaintiff's physical impairments of obesity and diabetic neuropathy.

### D. The ALJ properly relied on the Vocational Expert

Lastly, Plaintiff argues that the ALJ erred in relying on the Vocational Expert's ("VE") assertion that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT").[3] (Tr. 416). I disagree.

Under Social Security Ruling 00-4p, when a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative duty to ask about any possible conflict between that VE's testimony and the DOT. *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x. 973, 975 (11th Cir. 2012). If the VE asserts that his or her testimony is inconsistent with the DOT, then the ALJ must resolve this conflict before relying on the VE to determine whether the individual is or is not disabled. *Id.* But when the VE asserts that his or her testimony is consistent with the DOT, the ALJ does not err by relying on the VE's assertion as "the ALJ is not required independently to identify whether there is any inconsistency" in this circumstance. *Garskof v. Astrue*, No. 507-CV-288-OC-GRJ, 2008 WL 4405050, at *6 (M.D. Fla. Sept. 26, 2008); *Leigh*, 496 F. App'x. at 975.

---

[3] The DOT is a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy. *See Estrada v. Barnhart*, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. Feb. 24, 2006). Although the DOT "'provides occupational information on jobs in the national economy' it 'is not comprehensive' nor 'the sole source of admissible information concerning jobs.'" *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 938 (11th Cir. 2011) (*quoting Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999)).

During the hearing, the ALJ specifically asked the VE to consider a person who could only perform simple tasks with only occasional interactions with the public, and the VE identified specific examples of jobs from the DOT; to wit: document preparer, fishing reel assembler, and order clerk. (Tr. 66–73). While Plaintiff argues that the reasoning levels required to perform the occupations of document preparer and order clerk exceed the RFC limitation of only performing simple tasks, and that the amount of interaction with others required to perform the occupation of order clerk exceeds the RFC limitation of only occasional interaction with the public, Plaintiff fails to establish any apparent inconsistency.[4] Notably, too, even if there is an inconsistency, Plaintiff takes no issue with the job of fishing reel assembler, for which there are adequate positions in the national economy.[5] In any event, and importantly, when the ALJ asked the VE whether the VE's testimony was consistent with the DOT, the VE said that is was. (Tr. 73).

Neither Plaintiff nor his representative raised the issue of an inconsistency during the hearing or provided evidence that contradicted the VE's testimony at that time, nor does Plaintiff establish an inconsistency here. (Tr. 71–73, 416). Additionally, any error with regard to considering the document preparer or order clerk jobs would be harmless, because the third job identified and not otherwise challenged—fishing reel assembler—is adequate. Thus, the ALJ did

---

[4] A document preparer and order clerk involve applying common sense and solving problems with concrete variables in standardized situations, but it is neither apparent, nor established by Plaintiff, that applying common sense and solving standardized problems with concrete variables is inconsistent with a limitation to simple tasks. An order clerk deals with customers via telephone or intercom, but again it is neither apparent, nor established by Plaintiff, that speaking with customers over the telephone or intercom constitutes more than occasional interaction with the public. *See* 209.567-014 ORDER CLERK, FOOD AND BEVERAGE, DOT 209.567-014, 1991 WL 671794; 732.684-062 FISHING-REEL ASSEMBLER, DOT 732.684-062, 1991 WL 679850; 249.587-018 DOCUMENT PREPARER, MICROFILMING, DOT 249.587-018, 1991 WL 672349.

[5] *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding that almost 24,000 jobs in the national economy is a significant number of jobs). Here, the VE stated that there are over 200,000 fishing reel assembler jobs in the national economy. (Tr. 33, 69).

not err by relying on the VE's testimony, and the ALJ's decision is supported by substantial evidence. *See Leigh*, 496 F. App'x at 975.

### IV. CONCLUSION

For the reasons stated above, the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The Clerk is **DIRECTED** to enter final judgment for the Commissioner and **CLOSE THE FILE**.

**DONE** and **ORDERED** in Ocala, Florida on September 7, 2016.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties